IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM ZIEGLER and VICKI ZIEGLER,** | CASE NO. 1:21-CV-00956 |
| Plaintiffs, | HON. JANE M. BECKERING |
| v. | |
| **POLARIS INDUSTRIES, INC. and ERIC KIPP,** | MAGISTRATE JUDGE SALLY J. BERENS |
| Defendants. | |

**PLAINTIFF WILLIAM ZIEGLER and VICKI ZIEGLER'S BRIEF ADDRESSING VENUE AND CHOICE OF LAW IN RESPONSE TO COURT'S MARCH 9, 2023 ORDER**

**RELEVENT FACTS CONCERNING VENUE AND CHOICE OF LAW**

On November 28, 2019, William Ziegler was a passenger in Eric Kipp's Polaris Ranger when it left the roadway, traveled down an embankment, overturned, came to rest in a creek with its rollover protection system (ROPS) collapsed upon him. Complaint at ¶7. The crash took place in Jackson County, North Carolina. *Id.* At that time, Eric Kipp was a North Carolina resident.[1] About six months after the crash he moved to Greenville, Michigan, where he remains a resident. Complaint at ¶6. At all times Plaintiffs were, and remain, Illinois residents. At all times Polaris was, and remains, a Minnesota citizen. Complaint at ¶2-3. Each and every 30(b)(6) witness Polaris identified is located in Minnesota.[2] It is believed that each 30(b)(6) witness resides in Minnesota, all within a modest drive of the Minneapolis-St. Paul airport.

---

[1] Undisputed fact established during Eric Kipp's deposition.
[2] Depositions of Jacob Flashing, John Melsen, Steven Wosick and Louis Brady each designated as a 30(b)(6) witness established they worked from Minnesota.

William Ziegler is an incomplete quadriplegic. Traveling by commercial airplane service is a near impossibility. Vicki Ziegler is the primary caretaker of the Ziegler's two young children. The Zieglers maintain a close relationship with the Kipp family. (Vicki Ziegler and Eric Kipp are sister and brother.) They believe that if the trial of this matter took place in Michigan, the Kipp family, including Nina Kipp who does not work, could provide some support to the Ziegler family, including William Ziegler who is highly dependent on care from others.

At this juncture, fact discovery, including 30(b)(6) discovery is complete. Plaintiffs have retained and disclosed seven experts who reside in five different states. The first responders are located in North Carolina. All have been deposed and their testimony preserved on video.

Plaintiffs alleged in their complaint, and Polaris answered, as follows:

> 5.   Venue is proper over Polaris in this district and division because the claim arises from an incident which its foreseeable user, Eric Kipp, now resides.
>
>   ANSWER:   The allegations contained in Paragraph 5 of the Complaint state legal conclusions, characterizations, or arguments, to which no response is required. To the extent that a response is required to the allegations contained in Paragraph 5 of the Complaint, <u>Polaris responds only that it is not challenging venue in this case</u>. (Emphasis added)

Eric Kipp was dismissed from this case in May 2022. Polaris has not moved to transfer venue. Depositions have taken place without objection in four states (North Carolina, Michigan, Minnesota, and Illinois.)

**VENUE**

Venue is assessed at the commencement of an action, and complaints about improper venue must be raised promptly by way of a 12(b)(3) motion. Rule 12(b)(3) requires a defendant to raise the issue of improper venue by motion filed prior to filing a responsive

2

pleading, or in the responsive pleading. Under Rule 12(h)(1), if a defendant fails to object to venue in either of these two ways, it has waived the objection to improper venue. The burden is on the moving party to establish the need for a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). "Unless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The defense of improper venue is waived by failure to raise the objection in the answer or by motion before answering. *James v. Norfolk and Western Railway Co.,* 430 F. Supp. 1317 (S.D.Ohio 1976).

Motions brought under section 1404 (change of venue) are not subject to the limitations of Rule 12, and a delay in filing such a motion does not effect a waiver. *Smith v. Kyphon, Inc.*, 578 F.Supp.2d 954, 957 (M.D.Tenn. 2008) (citing *Blane v. Am. Inventors Corp.*, 934 F.Supp. 903, 905-06 (M.D.Tenn. 1996); 5A Charles A. Wright Arthur R. Miller, Federal Practice and Procedure § 1352, at 272 (1990)). *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 799-800 (E.D. Mich. 2009).

A convenience transfer of venue is governed by 28 U.S.C. § 1404(a), which states that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A plaintiff's choice of forum is generally given "substantial deference," though it "is not sacrosanct, and will not defeat a well-founded motion for change of venue." *Audi AG v. D'Amato,* 341 F. Supp. 2d 734, 749-50 (E.D. Mich. 2004).

In deciding whether to transfer a case, a Court must find that the following criteria satisfied: "(1) the action could have been brought in the transferee district court; (2) a transfer

3

serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Int'l Show Car Ass'n v. ASCAP,* 806 F. Supp. 1308, 1310 (E.D. Mich. 1992). Further, the movant bears the burden of demonstrating—by a preponderance of the evidence—that "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot, U.S.A., Inc.,* 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001). In making this showing, the movant must establish that the plaintiff's choice of forum is "clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P. C.,* 74 F.3d 253, 260 (11th Cir.1996). *Floyd's 99 Holding, LLC v. Judes Barbershop, Inc.*, No. 12-cv-14696, at 6-7 (E.D. Mich. Aug. 29, 2013).

The factors that guide a District Court's discretion when deciding whether to transfer a case including:

1. The convenience of the witnesses.
2. The location of relevant documents and relative ease of access to sources of proof.
3. The convenience of the parties.
4. The Locus of the operative facts.
5. The availability of process to compel the attendance of unwilling witnesses.
6. The relative means of the parties.
7. The forum's familiarity with the governing law.
8. The weight accorded to Plaintiff's choice of forum.
9. Trial efficiency and the interest of justice, based on the totality of the circumstances.

Plaintiff's counsel has searched for a case where a Defendant was dismissed or moved, and the remaining out of state Defendant sought to transfer the case to another venue, or a court did so *sua sponte*. Plaintiffs' counsel has not discovered such a case where venue pursuant under 28 USC §1391 was examined in this context. Legal treatise such as Corpus Juris Secundum have considered the issue, however, each and every case involves a state law case. See, 92A C.J.S. Venue §103.

4

Many cases point out that the U.S. Supreme Court found that the doctrine of forum non conveniens has been superseded by statute. See, *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722 (1996).

*IFL Group, Inc. v. World Wide Flight Services*, 306 F. Supp. 2d 709 (E.D. MI. 2004) considered a motion to dismiss for improper venue. It notes that the Defendant bears the burden of establishing the venue is improper, citing to *Amphion, Inc. v. Buckeye Electric*, 285 F.Supp. 2d 943, 945 (Mich. 2003) (Gadorla, J.). *IFL Group* lists factors that guide a district court's discretion when venue is not waived by the Defendant.

Plaintiff will address each of the factors.

**The Convenience of the Witnesses**

Michigan is more convenient than any jurisdiction outside of Chicago. It is not likely the first responders will appear at trial as all of their testimony has been memorialized, and will be used by the various experts in this matter. Dustin Hoyle, the witness who first came to rescue William Ziegler, did not appear for his deposition on three separate occasions. There is no reason to believe he would be any more cooperative if we were under a subpoena for trial. Polaris witnesses are all located in Minnesota. Who, or how many, will be present at trial is unknown to the Plaintiffs. Experts for the parties are likely to be from a variety of states, and should not factor into the court's decision. Each voluntarily signed on to the case.

**The Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

Because all of the documents have been transmitted electronically this element is neutral and should not factor into the decision. As concerns the site of the crash, it has been heavily photographed and modeled in 3-D. It will be discussed by experts. It is very unlikely that a jury will ever go to the actual crash site.

The subject UTV was sold by Eric Kipp to an unknown buyer when he moved from North Carolina to Michigan. The parties have never examined the same as its location remains unknown.

**The Convenience of the Parties**

See above.

**The Locus of Operative Facts**

This is a product liability suit. The pending negligence count against Kipp was dismissed in May of 2022. Each and every decision made regarding the defective ROPS was made in Minnesota.[3] Those facts, however, will be brought forward by witnesses, both employed by Polaris and via documents. If the matter must be transferred, Minnesota is the locus of each fact regarding design decisions. The crash occurred in Sylva, North Carolina.

**The Availability Of Process To Compel The Attendance Of Unwilling Witnesses.**

The only witness unwilling to attend a deposition was Dustin Hoyle. Perhaps a bench warrant could be issued for his arrest in North Carolina and he could be brought in. However, as experts have undertaken their analysis without the benefit of his testimony, compelling his attendance at trial does not seem a likelihood by either party at this juncture.

**The Relative Means of the Parties**

Polaris is a corporation selling its products internationally. Publicly available annual reports reveal it did very well during the pandemic as people escaped to the outdoors and purchased the many different types of products that Polaris sells, including off-road vehicles, motorcycles, snowmobiles, watercraft, etc. William Ziegler receives social security disability benefits. Vicki Ziegler is a school teacher. They have two young children to support.

---

[3] 30(b)(6) depositions concluded yesterday. Two transcripts are not available. Plaintiffs served notice for the depositions months ago and is blameless for the late presentation of this evidence.

**The Forums Familiarity With Governing Law**

As will be outlined below, Plaintiffs believe that Minnesota law governs the dispute. If the matter is to be transferred, a Minnesota judge, presumably, would have greater familiarity with Minnesota law than a Michigan, North Carolina, or Illinois judge. However, Plaintiffs in no way suggest that this court is not fully capable of analyzing the legal issues.

**The Weight According to Plaintiff's Choice of Forum**

Plaintiffs chose Michigan as it was more convenient than North Carolina. It remains so as William Ziegler is not capable of commercial air travel.

**Trial Efficiency in the Interest of Justice Based on the Totality of the Circumstances**

The interest of justice, which generally includes a prompt resolution of disputes, suggest that the matter remain in Michigan. The totality of the circumstances does not dictate otherwise, however, to the extent it does, it would seem that Minnesota would be an appropriate venue. A Minnesota venue would not burden Polaris. It would impose some hardship on Plaintiffs and their counsel.

## CHOICE OF LAW

In diversity cases, Federal courts apply the forum state's choice of law rules. *Retain Associates, Inc. v. Macy's East, Inc.,* 245 F.3d 694, 697 (8th Cir. 2001).

*Southerland v. Kennington Truck,* 254 Mich. 724, 562 N.W.2d 466 (Mich. 1997) is a comprehensive, if not scholarly examination of Michigan's history of choice of law as presented in a prior decision, *Olmstead v. Anderson,* 428 Mich. 1, 400 N.W.2d 292 (Mich. 1987), that held, "we will apply Michigan law unless there is a 'rationale reason' to do otherwise." *Id.* at 287. It explained a two-step analysis in determining whether a rationale reason to displace Michigan law exists. First, a court is to determine if any foreign state has an interest in having its law applied. If

no state has such an interest, the presumption in favor of Michigan law cannot be overcome. However, if a foreign state does have an interest in having its law applied, a court then must determine if Michigan interests mandate that Michigan law be applied, despite the foreign interest. *Id.*

In the case at bar, Michigan's connection is completely fortuitous. But for Eric Kipp's move six months after the crash, Michigan would not have jurisdiction. Additionally, the Michigan resident which established jurisdiction was dismissed nearly a year ago. Plaintiffs' allegations against Polaris have nothing to do with Michigan, or for that matter, North Carolina. The ROPS was defective in its design. The statements affixed to the vehicle regarding its ROPS are demonstrably, and objectively, false. Every design decision having anything to do with the ROPS took place in Minnesota. Polaris' express warranty that the ROPS complied with OSHA regulations, likewise, the judgment of Polaris' engineers in Minnesota. Plaintiffs do not allege that the assembly was improper, or a manufacturing defect existed. Plaintiffs' allegations are entirely design defect in nature. No aspect of that design (or promises about its safety) have anything to do with Michigan. The vehicle, literally and figuratively, never touched soil in the state of Michigan.

The facts here align with *Olmstead v. Anderson, Supra,* a case involving a Wisconsin motor vehicle crash where Minnesota citizens were struck and killed by a Michigan resident. The trial court applied Wisconsin law using the doctrine of *Lex Loci Delicti.* The Court of Appeals and Michigan Supreme Court found Michigan law applied because Wisconsin's connection to the lawsuit (the location, but no citizens) was an insufficient connection. Significantly, and directly on point to the present case, the legal issue upon which the three states disagreed was damages.

> The states in which both Plaintiff and Defendant were citizens allowed for unlimited recovery in wrongful death actions, but the state of the accident does not. Applying the *Lex Loci Delicti* will not advance the conceptual rationales underlying the doctrine.

8

> Furthermore, no unfairness would result to the parties in applying Michigan law. Finally, since no citizen of Wisconsin is involved in the action, it has no interest in seeing its law applied.

*Olmstead* at 31-32.

In the case at bar, Plaintiffs' ability to collect the full measure of awarded damages is an extremely significant issue. Michigan law caps damages at approximately $887,500.00. See, M.C.L. 600.2946a. William Ziegler, a former three-sport athlete, husband, father, and working citizen who was extremely active in the life of his family, and community is now unemployed and confined to a wheelchair for the rest of his life. Yet, the rest of his life has been shortened. As concerns the rest of his life, he will depend upon the care of others. Currently, he is capable of self-catheterization for bowel and bladder. That will come to an end. Pressure sores, infections and respiratory insufficiency will become a regular occurrence, and a constant concern. Few, if any, reasonable juries would award him Michigan's cap or less. Vicki Ziegler's loss of consortium claim is also reasonably valued at well beyond Michigan's cap. Rather than have normal marital relations with her husband, she assists cleaning him after his daily bowel routine. Many more details supporting this evaluation can be provided should the court believe it is necessary. Polaris' counsels have thoroughly deposed the Plaintiffs. It is unlikely they have any disagreement that the noneconomic damages significantly exceed Michigan's cap. Rather, it is the primary reasons why Polaris will fight to keep Minnesota law from applying. The heavily disputed aspect of this case is liability, not damages.

Michigan and Minnesota also differ dramatically on the issue of joint and several liability, thus affecting recoverable damages. Michigan does not recognize several liability amongst joint tortfeasors. Minnesota law provides that when a Defendant is greater than 50% at fault, it is severally liable for the entire verdict. See, Minn. Stat. §604.02. Under Michigan law, Plaintiffs

9

will not be able to collect any portion of a verdict assigned to Eric Kipp. Under Minnesota law, Kipp will be fully protected as Plaintiffs have released him as a part of the settlement. Polaris will receive a full setoff for what Kipp paid. If Polaris is found greater than 50% at fault, Plaintiffs will be able to collect all of the damages awarded, minus the Kipp settlement.

Plaintiffs' ability to recover damages is also severely impacted by North Carolina law's application of contributory negligence. In North Carolina, a Plaintiff cannot recover if he, too, was negligent and where that negligence was a proximate cause of his injuries. See, *Burnham v. S&L Sawmill,* 229 N.C. Ct. App. 334, 749 S.E.2d 75, 84 (2013). Polaris alleges William Ziegler was impaired by his consumption of alcohol as he and Kipp visited on Thanksgiving, and but for the impairment, he would have refrained from allowing himself to be a passenger in the rollcage equipped Polaris Ranger. (An impaired passenger, apparently, will not realize the ROPS, while appearing brawny, was actually rather fragile. A sober passenger, under Polaris' theory, would be smart enough to know the difference, but, according to the logical extension of this defense, assume the risk of injury once the ROPS collapses.) If North Carolina law applies, and a jury were to find Mr. Ziegler even 1% contributorily negligent, the entirety of any verdict for him and his wife would be uncollectible. Michigan has no interest in imposing a pure contributory negligence scheme upon an Illinois citizen suing a Minnesota manufacturer for failing to design a reasonably safe Rollover Protection System from its Minnesota offices. Michigan, Minnesota, and Illinois apply a modified comparative fault rule - - a system Polaris seeks to avoid.

## CONCLUSION

Polaris waived any venue objection that may have allowed this matter to be dismissed or transferred pursuant to 28 U.S.C. §1391. Fact discovery is complete. Plaintiffs have revealed the names of five experts, and disclosed reports from a life care planner, physiatrist, and economist.

In three weeks, Plaintiffs' liability experts' reports will be disclosed. There does not appear to be any case law that would require the court to transfer the matter. If it is to be transferred, Minnesota would be the appropriate venue as it is the venue of the alleged negligent conduct. However, transferring the matter to Minnesota will be inconvenient for the Plaintiffs. It should be noted, counsel for the parties maintain offices only blocks from each other in Chicago. They have worked cooperatively in prosecuting and defending this case. Having many lawyers decamp from their offices to Minnesota does not strike the Plaintiffs as efficient, in the interest of justice, or in any way advancing a resolution of this case, particularly when counsel have agreed to a mediation in June with a retired Cook County, Illinois judge.

Choice of law as it relates to damages, including Plaintiffs' ability to fully recover all of the damages that may be awarded, is a very significant issue. Michigan law caps Plaintiffs' recoverable damages. North Carolina law eliminates a Plaintiff's recovery if he is even 1% contributory negligence. Michigan, Minnesota and Illinois law allow a negligent Plaintiff to recover his damages, so long as he is not more than 50% contributorily negligent, subject to reduction for his share of negligence and offset of prior settlements. Minnesota law allow Plaintiffs to recover all damages from a Defendant more than 50% at fault, minus the share assigned to Plaintiff for his negligence. Polaris has made clear its plan to blame William Ziegler for not appreciating Kipp was impaired. At trial, it will spend considerably more time blaming Kipp and Ziegler than defending its product.

While the court maintains jurisdiction as Kipp was a proper Defendant, at this point, Michigan has no interest in the dispute. Polaris should not be heard to complain that the state where it chose to incorporate and do business has unfair laws. North Carolina does not have any interest in deciding a product liability case brought by Illinois citizens against a Minnesota corporation.

11

Polaris will not be restricted in defending its product, blaming Eric Kipp for the crash, or arguing that its ROPS is plenty sufficient for a passenger.

Transferring venue at this juncture would not serve the interest of justice, particularly when Polaris waived any venue objection. Minnesota law is appropriate, fair, reasonable and should govern the case as, under the circumstances of this case, it is inconsistent with Michigan and North Carolina law on the issue of damages and the Plaintiffs' ability to collect full damages through several liability. Michigan does not have an interest in deciding a product case that does not concern its citizens in any way at this point. North Carolina's interest, if any, at this point is more theoretical then actual. Allowing Minnesota product and warranty law to control issues of liability and damages for a Minnesota corporation is entirely fair and consistent with Michigan's choice of law approach to deciding when its law should be displaced.

Dated:  March 23, 2023                                Respectfully Submitted By:

*/s/ Thomas M. Paris*
Thomas M. Paris
*Counsel for Plaintiff William Ziegler and Vicki Ziegler*

Thomas M. Paris
55 W. Monroe, Suite 3330
Chicago, IL 60603
312-759-1600
tp@tomparislaw.com

## PROOF OF SERVICE

Thomas M. Paris, being first duly sworn, deposes and states that on the 23rd day of March 2023, he did cause to be served a copy of the foregoing instrument and this Certificate of Service upon all counsel via email.

/s/ *Thomas M. Paris*

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**
Dawn M. Beery
Matthew Nirider
Craig L. Sanders
Deana Stein
Brooke Rogers
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
dbeery@beneschlaw.com
mnirider@beneschlaw.com
csanders@beneschlaw.com
dstein@beneschlaw.com
brogers@beneschlaw.com

**BARNES & THORNBURG LLP**
Anthony C. Sallah
171 Monroe Avenue N.W., Suite 1000
Grand Rapids, MI 49503-2694
Anthony.Sallah@btlaw.com
*Counsel for Defendant Polaris Industries Inc.*